**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0840-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHABAR TAYLOR,

    Defendant-Appellant.

_____

Submitted March 7, 2018 — Decided June 12, 2018

Before Judges Alvarez and Currier.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-11-1379.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Brian D. Gillet, Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Tried by a jury, defendant Shabar Taylor was convicted of second-degree unlawful possession of a weapon, N.J.S.A.

2C:39-5(b), and acquitted of second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a). The trial judge sentenced defendant on September 6, 2016, to five years imprisonment subject to forty-two months of parole ineligibility. See N.J.S.A. 2C:43-6(c). We now affirm.

We glean the following from the trial record. On July 23, 2015, A.N. surreptitiously let defendant, who was then her boyfriend, into her home. At the time, A.N. was fifteen years old. As the two spoke in the kitchen, defendant pulled gloves and a face mask out of his sweatshirt pocket while saying "this is real. This is what I'm about." A.N. heard her younger cousin on the stairs, sent her back upstairs, and turned around. She saw defendant had placed a gun on the table. He took something out of the handle, and when he picked it up, the gun went off. Defendant grabbed it and fled.

A.N.'s mother awakened and ran downstairs. She smelled gunpowder in the kitchen, and took both girls back into her bedroom. The Edison Police Department responded to her 911 call within five minutes.

Officer Joseph Palko was first to arrive at the scene. He found a bullet groove on the kitchen table, a bullet hole in the wall, and a .40 caliber bullet casing on the floor. A chair that had been knocked over and the back had broken off. At trial, the

parties stipulated that defendant did not have a permit to purchase or carry a firearm. A.N. identified defendant as the person who shot the gun.

The defense argued to the jury that the matter was inadequately investigated. This included the State's failure to take into evidence for fingerprint analysis an empty bottle that A.N.'s mother told the officers at the scene had been brought there by the person with the gun. The police did not obtain the bullet, which would have matched the empty cartridge.

A second officer who was at the scene testified on behalf of the State, as did an evidence technician. The lead investigative officer, a Sergeant Abrams,[1] did not testify. Although defense counsel referred to him during questioning, the court barred any mention of his absence during closing statements. The court sustained the State's objection to the testimony on the basis of State v. Clawans, 38 N.J. 162 (1962). The judge found defendant had not given the prosecutor any prior notice of his intention to argue that the State's failure to call Abrams was because his testimony would have been unfavorable. Defense counsel argued that his intent was only to argue that the State failed to meet its burden by not calling that particular officer. The judge

---

[1] His full name is not in the record.

interpreted <u>Clawans</u> to mean that "there just can't be an inference that he would have said something advantageous." Accordingly, she prevented defense counsel from mentioning the point further.

In summation, defendant also argued that A.N. was motivated by her desire for revenge because defendant had found another girlfriend. Trial counsel also attacked A.N.'s mother's truthfulness, claiming her testimony was false regarding an apologetic text from defendant, about which she never told police.

During closing, the prosecutor mistakenly told the jury that A.N.'s mother was unsure if she had told Abrams about the empty bottle; in fact, she testified she had told them. There was some question as to whether defendant used his own cell phone when he first called A.N. about visiting her that night, as opposed to a call he made to her later, after the incident occurred. In response to the argument that the discrepancy corroborated A.N.'s untrustworthiness, the prosecutor said that it was possible that defendant simply charged his phone on a car charger. The prosecutor also said that whether defendant hid the gun in A.N.'s home or brought it there, was inconsequential because the point was that he left with it. Additionally, the prosecutor incorrectly said A.N. testified that defendant reached out for the gun and it went off, "because when he popped the clip he forgot to take the shell out of the chamber."

Defense counsel asked the judge to instruct the jury that they were not to speculate, but the request was denied. The court responded that the prosecutor's comments merely urged the jury to draw reasonable inferences from the evidence. In its closing charge, the trial court did instruct the jury that the attorneys' comments were not evidence, and that the jury's recollection of the evidence controlled.

Now on appeal, defendant raises the following arguments:

> POINT I
> THE TRIAL COURT IMPROPERLY PRECLUDED DEFENSE COUNSEL UNDER STATE V. CLAWANS, 38 N.J. 162 (1962), FROM ARGUING REASONABLE DOUBT BASED ON A LACK OF EVIDENCE IN SUMMATION. THIS DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE. U.S. Const. Amend. VI, XIV; N.J. Const. Art. I, ¶¶ 1, 10.
>
> POINT II
> THE PROSECUTOR'S MISCONDUCT DENIED DEFENDANT A FAIR TRIAL. U.S. Const. Amend. XIV; N.J. Const. Art. I, ¶ 1.

I.

In State v. Hill, 199 N.J. 545 (2009), the Court addressed a similar claim to the one made here—that the State had failed to call an essential witness and, as a result, defense counsel should be entitled to argue to the jury in closing that it could draw an adverse inference from the witnesses' absence. Id. at 560-61. The Court said a trial judge must make a "dispassionate assessment of the circumstances to determine whether reference to an inference

in summation is warranted and, further, whether a jury instruction should be injected into the mix of the parties' arguments, informing the jurors that they may draw such an inference from a party's failure to call a witness." Id. at 561 (citing Clawans, 38 N.J. at 172).

In order to draw the inference, however, more must be demonstrated than the mere circumstance that a party fails to "call a witness who has knowledge of relevant facts." Ibid. The determination requires "caution," and the trial court must decide whether the absent witness is only within the power of one party, whether they are available to that party both practically and physically, that the "testimony of the uncalled witness will elucidate relevant and critical facts in issue," and that the testimony is "superior to that already utilized in respect to the fact to be proven." Ibid.

In this case, defendant wanted to argue that the lead detective was not called because the State did not wish to draw attention to its failure to investigate or to some other procedural misconduct. Additionally, defendant argues that even if he was not entitled to a Clawans charge, his constitutional right to present a defense was denied because he was prohibited from making the point during summation.

A-0840-16T2

Defendant was not entitled to a <u>Clawans</u> charge. He did not meet the conditions enunciated in <u>Hill</u>. The lead detective was as available to him as he was to the prosecutor. His testimony would have been cumulative. Defendant had no actual circumstance he could proffer that was only available to Abrams. Additionally, no notice was given to the State that defendant intended to make the argument.

However, defendant reiterates on appeal that he did not request a <u>Clawans</u> charge, but merely wanted to argue to the jury that the detective may have testified favorably for the defense. Defendant's contention that he merely wanted to refer to the absence, and hypothesize from it that Abrams would have testified favorably to him, is equivalent to asking the jury to draw an unfavorable inference. By doing so, defendant would have asked the jury to speculate based solely on the detective's absence as opposed to drawing reasonable inferences from the evidence. Accordingly, we find the trial judge did not err.

## II.

To warrant reversal of a conviction, a prosecutor's statements must constitute a clear infraction and substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense. <u>State v. Timmendequas</u>, 161 N.J. 515, 575 (1999). Furthermore, a prosecutor's remarks may

be harmless if they are only a response to remarks made by defense counsel. State v. Wakefield, 190 N.J. 397, 451, 457 (2007) (citations omitted).

There is no question that the prosecutor misspoke about the bottle. The point, however, is inconsequential in light of the testimony of both A.N. and her mother. Furthermore, the comment was brief.

The prosecutor's arguments regarding the gun were only intended to drive home the point that no matter where the gun was located before defendant left, A.N. was not the one who left the house with a gun. This was fair comment. A prosecutor is entitled in summation to encourage the jury to draw reasonable inferences from the evidence. See State v. R.B., 183 N.J. 308, 330 (2005).

Additionally, defendant objects to the prosecutor having stated that perhaps defendant called A.N. from his own cell phone later on because he charged his phone. Although that certainly was speculation, it is not so meaningful as to have had an impact on the jury's decision. See State v. Morton, 155 N.J. 383, 457 (1998).

The objected-to statements do not add up to the type of prosecutorial misconduct which might have affected jury deliberations and their final verdict. No prejudicial error was committed by the State in summation.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION